UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | | |
|---|---|---|
| ASHLEY R., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case # 1:21-cv-818-DB |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | MEMORANDUM DECISION |
| | § | AND ORDER |
| Defendant. | § | |

## <u>INTRODUCTION</u>

Plaintiff Ashley R. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied her application for Disability Insurance Benefits ("DIB") under Title II of the Act, and her application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 12).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 8, 9. Plaintiff also filed a reply. *See* ECF No. 10. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 8) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 9) is **GRANTED**.

## <u>BACKGROUND</u>

Plaintiff protectively filed applications for DIB and SSI on February 3, 2016, alleging disability beginning August 3, 2014 (the disability onset date), due to anxiety, panic attacks, bipolar disorder, PTSD, pinched nerve in her neck, a prior assault with blows to the head, right shoulder pain impacting her ability to lift, hip problems with numbness in the right leg, and

polycystic ovarian syndrome. Transcript ("Tr.") 70, 207-08, 209-14, 244. The claims were denied initially on April 8, 2016, after which Plaintiff requested an administrative hearing. Tr. 70.

On April 11, 2018, Administrative Law Judge Hortensia Haaversen ("ALJ Haaversen") conducted a video hearing from Falls Church, Virginia. Tr. 70.  Tr. 10-46. Plaintiff appeared and testified from Buffalo, New York, and was represented by Kelly Laga, an attorney. Tr. 70. 10-46. Stephanie R. Archer, an impartial vocational expert, also appeared and testified. *Id*. ALJ Haaversen issued an unfavorable decision on September 24, 2018. Tr. 67. The Appeals Council granted review on March 25, 2019 (Tr. 200), and on May 15, 2019, issued a decision adopting the findings of the ALJ, except that the Appeals Council found that Plaintiff's date last insured was June 30, 2015, and she was not disabled from August 3, 2014, the alleged onset date, through September 24, 2018, the date of ALJ Haaversen's decision. Tr. 1-9.

Thereafter, Plaintiff appealed to the United States District Court for the Western District of New York. Tr. 1293-94. On April 9, 2020, the Court remanded the case pursuant to a stipulation between the parties. Tr. 1336-38. In a follow-up order dated August 29, 2020, the Appeals Council vacated the final decision of the Commissioner, finding that the hearing decision did not address and resolve an inconsistency between the RFC and the jobs cited at step five and ordered the administrative law judge on remand to "[o]btain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base." Tr. 1343.

On March 17, 2021, Administrative Law Judge Stephan Bell ("the ALJ") held a telephonic hearing,[1] at which Plaintiff appeared and testified and was represented by Zachary Zabawa, an attorney. Tr. 1178, 1195-1223. Joseph Atkinson, an impartial vocational expert, also appeared and

---

[1] Due to the extraordinary circumstance presented by the Coronavirus Disease 2019 ("COVID-19") pandemic, all participants attended the hearing by telephone. Tr. 1178.

testified. *Id*. On April 2, 2021, the ALJ issued an unfavorable decision, finding Plaintiff not disabled. Tr. 1175-94. Plaintiff appeals that decision directly to this Court.

## LEGAL STANDARD

### I.     District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II.    The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in her April 2, 2021 decision:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2018.

2. The claimant has not engaged in substantial gainful activity since August 3, 2014, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3. The claimant has the following severe impairments: bilateral hip tendinopathy; polyarthritis; and mental health impairments variously diagnosed as panic disorder, unspecified depressive disorder, post-traumatic stress disorder, bipolar disorder, opiate use

4

disorder, cocaine use disorder and cannabis use disorder (20 CFR 404.1520(c) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)[2] except the claimant can lift, carry push and pull 20 pounds occasionally and 10 pounds frequently; can sit for 6 hours, stand for 6 hours, walk for 6 hours; can climb ramps and stairs occasionally, climb ladders, ropes, or scaffolds occasionally; can work in vibration occasionally; is able to perform simple, routine tasks and make simple work-related decisions; can interact with supervisors and coworkers occasionally, but can never interact with the public.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was born on March 27, 1987 and was 27 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.  The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.  The claimant has not been under a disability, as defined in the Social Security Act, from August 3, 2014, through the date of this decision (20 CFR 404.1520(g) and 416.920(g))..

Tr. 1178-1188.

Accordingly, the ALJ determined that, based on the application for a period of disability and disability insurance benefits protectively filed on February 3, 2016, the claimant is not disabled

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

under sections 216(i) and 223(d) of the Social Security Act. Tr. 1188. The ALJ also determined that based on the application for supplemental security income protectively filed on February 3, 2016, the claimant is not disabled under section 1614(a)(3)(A) of the Act. Tr. 1189.

## ANALYSIS

Plaintiff asserts three points of error. First, Plaintiff argues that the ALJ "implicitly reject[ed]" the reaching limitations assessed by state agency consultative examiner Rita Figueroa, M.D. ("Dr. Figueroa") and failed to explain why she elected to incorporate no reaching limitations into the RFC. *See* ECF No. 8-1 at 15-16. Plaintiff further argues that the ALJ's error was harmful because all three jobs the ALJ found Plaintiff capable of performing at step five required either constant or frequent reaching. *See id*. Next, Plaintiff argues that the ALJ improperly discounted the opinion of treating psychiatrist Loida Reyes, M.D. ("Dr. Reyes"), allegedly because the opinion form was completed by Plaintiff's counselor, and further, the ALJ failed to properly apply the treating physician rule to the opinion. *See id*. at 16-20. Finally, Plaintiff argues that, despite purporting to give great weight to the opinion of consultative psychologist Gina Zali, Psy.D. ("Dr. Zali"), the ALJ failed to explain how she accounted for Dr. Zali's opined stress limitations in the RFC. *See id*. at 20-22.

In response, the Commissioner argues that substantial evidence supports the ALJ's RFC determination. *See* ECF No. 9-1 at 6-9. The Commissioner also argues that the ALJ reasonably gave only some weight to Dr. Figueroa's 2016 opinion because it was not entirely consistent with the record, including later evidence in the record confirming Plaintiff's treatment for polyarthritis, which the ALJ found supported greater limitations, but also inconsistent with evidence indicating that Plaintiff was selling her tramadol (pain medication), calling into question the credibility of her pain complaints. *See id*. at 9-11. The Commissioner also argues that the ALJ properly evaluated Plaintiff's mental impairments; properly declined to give controlling weight to Dr. Reyes' opinion;

and adequately accounted for the stress limitations opined by Dr. Zali in the RFC finding. *See id.* at 11-17.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the record in this case, the Court finds that the ALJ thoroughly considered the evidence of record and reasonably concluded that although Plaintiff had mental and physical impairments, they were not so limiting as to preclude all work. The ALJ's finding was supported by the opinions of the consultative examiners and the state agency psychologist, Plaintiff's largely unremarkable mental status examination findings and conservative treatment for Plaintiff's physical impairments, and Plaintiff's robust activities of daily living, including her ability to work at multiple jobs during the relevant period, attend concerts, travel out of state, sail boats, and perform household chores. Accordingly, the Court finds no error.

At the time of her application, Plaintiff alleged disability due to a pinched nerve in her neck, numbness in her right leg, hip problems, polycystic ovarian syndrome, and various mental health impairments. Tr. 244. At the March 2021 hearing, Plaintiff testified that she was having problems with depression, anxiety, and physical issues. Tr. 20-21, 30-32, 40. She also testified that a problem with her neck made it difficult for her to do things with her arms, and she also stated she had difficulty standing up for long periods. Tr. 33-35. She testified that her depression and anxiety made it difficult to do simple tasks, such as getting out of bed and taking a shower. She also testified she had problems going out in public. Tr. 20-21, 30-32, 40.

The record reflects that Plaintiff had a history of mental health treatment at Catholic Charities of Buffalo ("Catholic Charities") since August 2013. *See* Tr. 501-832, 911-1174. Plaintiff had been referred by her primary care physician ("PCP") Alicia Hermogenes, M.D. ("Dr. Hermogenes"), and initially complained of panic attacks and trouble sleeping. Audrey Urbanczyk, LCSW-R ("Ms. Urbanczyk"), performed Plaintiff's initial assessment. Tr. 348-49. She documented "diagnostic impression" of panic disorder with agoraphobia. Tr. 346. Plaintiff continued counseling with Ms. Urbanczyk until March 2015; thereafter, her care was transferred to Susan Lankenau, LMSW ("Ms. Lankenau"). Tr. 1087. In addition to counseling appointments with Ms. Urbanczyk and Ms. Lankenau, Plaintiff attended medication management appointments with Dr. Reyes approximately once a month from September 3, 2013, through March 8, 2018. Tr. 629-833, 940.

In August 2015, Plaintiff reported enjoying her summer off after quitting her job at Dunkin Donuts. Tr. 1069. She returned to work in September 2015 and reported that her anxiety was controlled, and her mood was stable. Tr. 733. She continued doing well in October 2015, but she quit her job in November 2015 after calling in sick due to a spider bite; she did not return because she "felt uncomfortable" after her manager got "verbally angry." Tr. 725, 729. Plaintiff noted improvement with a new medication in June 2016; she was working by September 2016, and her anxiety was controlled. Tr. 689. She remained stable from December 2016 to August 2017, until she reported being fired in September 2017 after having a severe panic attack. Tr. 649. 653, 665, 677, 681.

On March 30, 2016, Dr. Zali performed a consultative psychological evaluation. Tr. 324-27. Plaintiff reported she was a high school graduate and received a "regular education;" she was last employed in December 2015 as a cashier. Tr. 324. Plaintiff reported she had been in outpatient mental health treatment since 2011. *Id*. She complained of sleep difficulties, loss of appetite with

weight loss, dysphoric moods, crying spells, irritability, feelings of hopelessness and worthlessness, as well as anxiety with panic attacks, characterized by breathing difficulties, feeling numb, and feeling flustered. *Id*. She reported her symptoms began after she was assaulted while working at a Rainbow store. Tr. 324-25. She stated that her panic was triggered by crowds, being in a store with lots of people, or while at work. *Id*. She also reported fits of rage with throwing things, and her mind goes blank. She also said that her anger can turn to panic. Tr. 325. She said her pain attacks occur three times per week. *Id*.

Plaintiff's mental status examination was largely normal. Tr. 325-26. Although she presented with dysthymic mood and dysphoric affect, her eye contact, speech and thought processes were normal. Tr. 325. Plaintiff's memory was intact; her attention and concentration were assessed as mildly impaired, but only due to difficulty performing division. Tr. 326. Plaintiff reported she could clean and do laundry; her father usually did the cooking because she was usually not hungry; and she did not shop because she was fearful of having a panic attack. *Id*. Dr. Zali opined that Plaintiff had mild limitation in maintaining attention, concentration and a regular schedule, and moderate limitation in dealing with stress. Tr. 326-27.

Plaintiff also underwent an internal medicine examination by state agency consultative examiner Dr. Figueroa on March 30, 2016, Tr. 329-32. Plaintiff reported that she sustained a right shoulder injury in 2011 after she was working at a store and was attacked by a customer; however, she never sought any treatment for it. Tr. 329. She rated her shoulder pain as 10/10 but said Tramadol reduces her pain to 5/10. *Id*. She reported past chiropractic treatment but stated she had no treatment once her Worker's Compensation case was closed. *Id*. Plaintiff reported she had difficulty lifting or carrying more than 15 pounds and had pain when she pulls. *Id*. She also reported smoking a pack of cigarettes daily and denied alcohol or street drug use. *Id*. She stated

she does not cook; she cleans twice per week and does laundry; and she denied shopping. Tr. 330. She reported she was independent in personal care and grooming *Id*.

On examination, Plaintiff was measured at 5'3" tall and weighed 147 pounds. *Id*. She walked with a normal gait; walked on heels and toes without difficulty; and performed a full squat. *Id*. On musculoskeletal examination, Plaintiff demonstrated some restriction in cervical spine and right shoulder motion, but she had normal motion of the lumbar spine and all other joints in the upper and lower extremities. Tr. 331. An x-ray of the right shoulder, however, was negative and showed no evidence of fracture or dislocation and well-maintained joint spaces. Tr. 333. There was no sensory deficit, but she was not able to discern two-point discrimination in any of the extremities. Tr. 331. There was mildly reduced strength in the right upper extremity, but grip strength and dexterity were normal bilaterally. *Id*. Dr. Figueroa opined that Plaintiff would have mild limitation for activities requiring repetitive reaching, pushing and pulling. Tr. 332.

On April 7, 2016, state agency review consultant A. Dipeolu, Ph.D. ("Dr. Dipeolu"), opined that Plaintiff had mild limitations in activities of daily living and maintaining concentration, persistence, or pace; and moderate limitations in maintaining social functioning. Tr. 51. Dr. Dipeolu also opined that Plaintiff was moderately limited in interacting appropriately with the general public; accepting instructions and responding appropriately to criticism from supervisors; and getting along with coworkers or peers without distracting them or exhibiting behavioral extremes. Tr. 55.

On April 3, 2018, Ms. Lankenau and Dr. Reyes completed a "Mental T[r]eating Medical Source Statement" at the request of Plaintiff's attorney. Tr. 1169-74. Plaintiff's diagnoses were listed as panic disorder, unspecified; depressive disorder; PTSD; and polycystic ovarian syndrome. Tr. 1170. The form noted that as of January 19, 2018, Plaintiff had moderate depression and mild anxiety; Plaintiff received medication management and counseling with "good" response, and her

10

prognosis was "fair to good." *Id*. Ms. Lankenau and Dr. Reyes checked boxes indicating that Plaintiff was "seriously limited" in remembering work-like procedures; maintaining attention for a two-hour segment; completing a normal workday and workweek without interruptions from psychologically based symptoms; and asking simple questions or requesting assistance. Tr. 1172. They also checked boxes indicating that Plaintiff was "unable to meet competitive standards" in working in coordination with or proximity to others without being unduly distracted; accepting instructions and responding appropriately to criticism from supervisors; dealing with normal work stress; understanding and remembering detailed instructions; carrying out detailed instructions; setting realistic goals or making plans independently of others; dealing with the stress of semiskilled and skilled work; and using public transportation. Tr. 1172-73.

Dr. Reyes and Ms. Lankenau noted that Plaintiff's "panic attacks occurred when she was around several people or when people were critical of her work, or when the pace of business increased beyond a relatively slow pace." Tr. 1173. They also noted that Plaintiff was unable to travel to unfamiliar places alone because her anxiety prevented her from attempting travel of this type; and her anxiety prevented her from using public transportation "at any time or for any purpose." *Id*. Finally, they opined that Plaintiff would be absent from work about four days per month due to her impairments; she could not engage in full-time competitive employment on a sustained basis; and her limitations began in 2011. Tr. 1174.

As noted above, Plaintiff asserts several challenges to the ALJ's RFC finding. *See* ECF No. 8-1 at 15-22. A claimant's RFC is the most she can still do despite her limitations and is assessed based on an evaluation of all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); Social Security Ruling ("SSR") 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20

C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Additionally, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino v Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). In so doing, the ALJ may "choose between properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Moreover, an ALJ is free to reject portions of medical-opinion evidence not supported by objective evidence of record, while accepting those portions supported by the record. *See Veino*, 312 F.3d at 588. Indeed, an ALJ may formulate an RFC absent any medical opinions. "Where, [] the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal citations and quotation omitted).

Moreover, the ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [his] decision," because the ALJ is "entitled to weigh all the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole); *Castle v. Colvin*, No. 1:15-CV-00113 (MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017)

(The fact that the ALJ's RFC assessment did not perfectly match a medical opinion is not grounds for remand.).

Furthermore, the burden to provide evidence to establish the RFC lies with Plaintiff—not the Commissioner. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a); *see also Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) ("The applicant bears the burden of proof in the first four steps of the sequential inquiry . . . ."); *Mitchell v. Colvin*, No. 14-CV-303S, 2015 WL 3970996, at *4 (W.D.N.Y. June 30, 2015) ("It is, however, Plaintiff's burden to prove his RFC."); *Poupore v. Astrue*, 566 F.3d 303, 305-06 (2d Cir. 2009) (The burden is on Plaintiff to show that she cannot perform the RFC as found by the ALJ.).

Contrary to Plaintiff's argument, substantial evidence supports the ALJ's RFC finding for a range of light work with occasional postural functions, involving simple, routine tasks, no interaction with the public, and only occasional interaction with supervisors and coworkers. Tr. 1183. In assessing Plaintiff's physical limitations, the ALJ considered that, during the relevant period, Plaintiff alleged various joint pains including in her hips, knees, neck, back, and hands. Tr. 1184. The ALJ also considered that Plaintiff followed up with her PCP for her various physical impairments and received no specialist care during the relevant period. Tr. 1184, 833-910.

The ALJ also discussed Plaintiff's complaints of hand pain and numbness, and observed that PCP Dr. Hermogenes noted a very weak handgrip but no quantified weakness. Tr. 1184, 838. As the ALJ noted, Dr. Hermogenes did not report whether Plaintiff's weak handgrip was bilateral or limited to a single side; and although she noted positive Tinel's sign, there was no indication whether it was unilateral or bilateral. *Id* The ALJ further discussed Plaintiff's hip pain, noting that she was referred to a Dr. Stube for her hips, but there was no indication in the record that Plaintiff sought further evaluation. Tr. 1184, 837-38. The ALJ also considered Plaintiff's complaints of neck pain from a previous injury, noting that she endorsed the inability to lift anything with her

right shoulder without pain; as the ALJ noted, however, the record did not document any specific complaints or limitations. Tr. 1184, 846, 864, 895. The ALJ also discussed the diagnostic findings of record showing negative x-rays of the knees and back, and an MRI of the hips revealing, at most, tendinopathy. Tr. 1184, 843, 846, 890, 892-93. The ALJ also noted that Plaintiff's attorney asked Dr. Hermogenes to complete a medical source statement, but Dr. Hermogenes refused, indicating that the questionnaire should be referred to Plaintiff's psychiatrist. Tr. 1184, 1500-01.

Plaintiff first complains that the ALJ erred in evaluating Dr. Figueroa's consultative opinion. *See* ECF No. 8-1 at 15-16. As noted above, Dr. Figueroa opined that Plaintiff would have mild limitations in reaching, pushing, and pulling repetitively. Tr. 1184, 1186, 329-33. Plaintiff argues that the ALJ "gave vaguely 'some' weight" to Dr. Figueroa's opinion and provided no explanation why she did not incorporate Dr. Figueroa's reaching limitations into the RFC. *See* ECF No. 8-1 at 15-16. Contrary to Plaintiff's argument, however, the ALJ reasonably gave only "some weight" to Dr. Figueroa's opinion. Tr. 1186. As the ALJ explained, Dr. Figueroa's 2016 opinion was not entirely consistent with the record, and while it may have been supported at the time, later-submitted evidence in the record supported greater limitations to account for Plaintiff's polyarthritis Tr. 1186, 833-910. The ALJ further noted that Plaintiff's pain was controlled on tramadol but also noted reports indicating that Plaintiff was selling her tramadol, making her pain complaints "questionable." Tr. 1186, 836, 852.

In any event, Dr. Figueroa's assessment that Plaintiff had mild limitations in repetitive reaching, pushing, and pulling was consistent with the ALJ's RFC finding for a range of light work. *See White v. Berryhill*, 753 F. App'x 80, 82 (2d Cir. 2019) (upholding a light work RFC based on an opinion that the claimant had "moderate limitations" in standing, sitting, and performing other activities); *Heidrich v. Berryhill*, 312 F. Supp. 3d 371, 374 n.2 (W.D.N.Y. 2018) ("postural limitations of moderate or lesser severity are generally considered consistent with the

demands of light work); *Gurney v. Colvin*, 2016 WL 805405, *3 (W.D.N.Y. March 2, 2016) (finding RFC for light work with no additional limitations consistent with opinion finding plaintiff moderately limited with respect to lifting, bending, reaching, pushing, pulling, or carrying). *see also Carroll v. Colvin*, 2014 WL 2945797, *4 (W.D.N.Y. 2014) (several courts have upheld an ALJ's decision that the claimant could perform light work even when there is evidence that the claimant had moderate difficulties in prolonged sitting or standing"). Thus, by limiting Plaintiff to a range of light exertional work, the ALJ adequately considered and incorporated Dr. Figueroa's opinion, including the opined reaching limitation, into the RFC. Tr. 1183, 1185. Accordingly, Plaintiff's argument on this point is meritless.

Moreover, despite arguing for additional reaching limitations in the RFC (*see* ECF No. 8-1 at 7-8, 15-16), Plaintiff points to no evidence demonstrating that she was incapable of performing a range of light exertional work, or any evidence warranting additional reaching limitations, as was her burden. *Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) ("Smith had a duty to prove a more restrictive RFC, and failed to do so."); *Poupore*, 566 F.3d at 306 (2d Cir. 2009) (plaintiff bears the burden of proving that her RFC is more restricted than that found by the ALJ); *see also Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983) (The Commissioner "is entitled to rely not only on what the record says, but also on what it does not say[.]") (citing *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)). On the contrary, the ALJ considered that during the relevant period Plaintiff did not seek or receive any specialty treatment for her alleged neck and shoulder pain; her examination results were unremarkable; the record did not document any specific limitations from Plaintiff's right shoulder or neck pain; and PCP Dr. Hermogenes declined to complete a medical source statement on Plaintiff's behalf. Tr. 1184, 843, 865, 1500-01.

The ALJ also properly considered Plaintiff's activities of daily living, finding they did not support a finding of disability, but rather supported a reduced range of light work. Tr. 1186. *See*

*Monroe*, 676 F. App'x at 9 (holding that the ALJ could rely on treatment notes and activities of daily living to formulate the RFC assessment); *see also Voght v. Saul*, 18-cv-1435-MJR, 2020 WL 3410837, at *5 (W.D.N.Y. June 19, 2020) (holding that the ALJ could rely on the claimant's statements about his daily activities in support of the RFC finding). Here, the ALJ considered that Plaintiff had worked at several jobs, went to a concert, competed in a boat race, cared for her sister, attended concerts and festivals, cooked meals for her father, and performed household chores. Tr. 1186, 423, 431, 701, 951, 1045, 1078, 1548, 1582. Thus, the ALJ properly considered the entire record, including Dr. Figueroa's opinion, the treatment notes, the objective medical evidence, and Plaintiff's extensive activities of daily living, and the ALJ's physical RFC finding was supported by substantial evidence.

While Plaintiff may prefer that the ALJ consider the evidence differently, the substantial evidence standard of review focuses on the ALJ's findings, not the alternative findings that Plaintiff would prefer. *See McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld."); *see also Barrere v. Saul*, 857 F. App'x 22, 24 (2d Cir. 2021) (noting that where "there is substantial evidence to support either position, the determination is one to be made by the factfinder"). Furthermore, as previously noted, it is within the ALJ's discretion to resolve genuine conflicts in the evidence, and here substantial evidence supported the ALJ's determination. *Veino*, 312 F.3d at 588; *Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998) ("It is for the SSA, and not this court, to weigh the conflicting evidence in the record").

Plaintiff next argues that the ALJ erred in in discounting the April 2018 medical source statement submitted by treating psychiatrist Dr. Reyes and counselor Ms. Lankenau and failed to properly apply the treating physician rule to their opinions. *See* ECF No. 8-1 at 16-22. Among other things, Dr. Reyes and Ms. Lankenau found that Plaintiff would be unable work in

16

coordination with others without being distracted, accept instructions from supervisors, and deal with normal work stress; she would be absent from work about four days per month due to her impairments; and she could not engage in full time competitive employment on a sustained basis. Tr. 1170, 1174. They also opined that Plaintiff's limitations began in 2011. Tr. 1174. The ALJ considered these opinions but reasonably declined to give them controlling weight.

For claims filed prior to March 27, 2017,[3] the opinions of Plaintiff's treating physicians should be given "controlling weight" if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2). An ALJ is required to consider several factors in determining how much weight an opinion should receive, including the length of the relationship and frequency of examinations, nature of the relationship, medical evidence that supports the opinion, consistency with the record, and if the physician's specialty is relevant to the impairment. *Burgess v. Astrue*, 537 F. 3d 117, 129 (2d Cir. 2008).

If the ALJ gives the treating physician's opinion less than controlling weight, he must provide good reasons for doing so. *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998); *see also Schaal v. Apfel*, 134 F. 3d 496, 503-504 (2d Cir. 1998). Good reasons for not assigning treating source opinion controlling weight are shown through express consideration of these factors, although a "searching review of the record" can also demonstrate good reasons for the weight given the opinion that does not traverse the treating source rule. *See Estrella v. Berryhill*, 925 F.3d 90, 95-96 (2d Cir. 2019) (citing *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)). In addition, a treating source opinion cannot be entitled to controlling weight if it is not consistent

---

[3] New regulations regarding the evaluation of medical evidence and rescission of Social Security Rulings 96-2p, 96-5p, 96-6p, and 06-03p, took effect on March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017). Because Plaintiff's claims were filed on February 3, 2016, the previous regulations are applicable to her claim.

with the source's own treatment notes or with other substantial evidence. *See Halloran*, 362 F.2d at 31-32 (citing *Veino*, 312 F.3d at 588); *Cichocki v. Astrue*, 729 F. App'x 71, 77 (2d Cir. 2013).

Contrary to Plaintiff's arguments (*see* ECF No. 8-1 at 16-20), the ALJ properly addressed the *Burgess* factors when evaluating this opinion and provided "good reasons" for giving it little weight. Tr. 1183-84, 1170-74. *See Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019) (citing *Burgess*, 537 F.3d at128). The ALJ first noted that Plaintiff did not begin treatment with these providers until 2013, and thus, their opinion that Plaintiff's limitations began in 2011 was based, in part, on Plaintiff's own statements. Tr. 1186, 335.  Nevertheless, the ALJ reasonably gave some weight to this opinion, noting that some portions were supported by the evidence, and accordingly accounted for such credibly established limitations in the RFC. Tr. 1186-87, 1170-74. However, the ALJ declined to give weight to the more extreme limitations assessed in the opinion suggesting total disability, because they were unsupported by the record, including the providers' own treatment notes showing that Plaintiff was stable; she was doing well with medications; she was able to control her stress and anxiety; and she had largely unremarkable mental status examinations. Tr. 1187, 407-08, 411-12, 415, 419, 423, 427, 435, 443, 451, 487, 533-34, 653, 665, 681, 793, 934-35. *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) (consistency) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.").

Contrary to Plaintiff's arguments (*see* ECF No. 8-1 at 19), the ALJ adequately explained what portions of the opinion he was accepting and what portions he was rejecting. Tr. 1186-87. The ALJ explicitly noted that he incorporated those aspects of the opinion that were supported by the record into the RFC finding, including Plaintiff's ability to follow short and simple instructions, but that she had difficulty with detailed instructions, and she was limited working with others, responding to supervisors, and dealing with work stress Tr. 1183, 1187. Furthermore, as previously

noted, an ALJ is free to reject portions of medical opinion evidence not supported by objective evidence of record, while accepting those portions supported by the record. *Veino*, 312 F.3d at 588 (an ALJ has discretion to accept or reject various portions of a treating physician's opinion, based upon substantial evidence in the record).

To the extent Plaintiff contends that the ALJ rejected Dr. Reyes and Ms. Lankenau's opinion because it was completed by Ms. Lankenau and only co-signed by Dr. Reyes, Plaintiff misinterprets the ALJ's analysis. *See* ECF No. 8-1 at 18 (citing Tr. 1174, 1187). While the ALJ did note that the opinion appeared to be completed by Ms. Lankenau and only co-signed by Dr. Reyes, the ALJ clearly explained her rationale for affording the opinion only some weight— namely that the opinion was inconsistent with the rest of the record, including these providers' own treatment notes, which did not support such restrictive limitations. Tr. 1186-87. Thus, Plaintiff's argument fails.

In addition, the ALJ's conclusions regarding Plaintiff's mental impairments were supported by other opinion evidence, including the opinions of psychological consultative examiner Dr. Zali (Tr. 324-27) and state agency psychological consultant Dr. Dipeolu (Tr. 51-52, 62). Tr. 1185-86. The ALJ gave "great weight" to Dr. Zali's opinion that Plaintiff had mild limitations maintaining attention, concentration, and a regular schedule, and moderate limitations dealing with stress. Tr. 1186, 326-27. The opinion of a consulting physician, such as Dr. Zali, may constitute substantial evidence in support of the ALJ's determination. *See Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983); *see also Lewis v. Colvin*, 548 F. App'x 675, 677-78 (2d Cir. 2013) (affirming ALJ's decision where ALJ gave more weight to consulting physician opinion than treating source opinion). As the ALJ noted, Dr. Zali's opinion that most of Plaintiff's limitation came from dealing with stress was well supported by the record, but he also noted that Plaintiff lost jobs partially due to interpersonal difficulties and partially due to her choice. Tr. 1186.

Accordingly, the ALJ reasonably limited Plaintiff's interactions with others and provided for no public interaction. Tr. 1183, 1186.

The ALJ's RFC finding was also supported by the opinion of Dr. Dipeolu. The Commissioner's regulations permit the opinions of non-examining sources, such as state agency consultants, to constitute substantial evidence in support of the ALJ's decision. *See Diaz v. Shalala*, 59 F.3d 307, 313 n.5 (2d Cir. 1995); *Camille v. Colvin*, 652 F. App'x 25, 28 (2d Cir. 2016). The ALJ gave "great weight" to Dr. Dipeolu's opinion that Plaintiff had difficulty relating to others but retained the ability to perform simple tasks with brief and superficial contacts with others. Tr. 1186, 51-52, 62. As the ALJ explained, the opinion "remain[ed] supported by the updated evidence of record in large part." Tr. 1186. *See* 20 C.F.R. §§ 404.1527(c)(3), 416.27(c)(3) (supportability), (c)(4) (consistency). Here, the opinion of Dr. Dipeolu supports the ALJ's finding that Plaintiff could perform work involving simple, routine tasks involving simple work-related decisions, with no more than occasional interaction with co-workers and supervisors, and no interaction with the public. Tr. 1183.

Furthermore, the ALJ relied on a variety of other evidence to conclude that, despite her mental impairments, Plaintiff retained the capacity to perform simple, routine tasks and make simple work-related decisions; and could interact with supervisors and coworkers occasionally but never interact with the public. Tr. 1183, 1185. *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 16-3p. As explained above, RFC is an administrative finding, not a medical one. The regulations explicitly state that the issue of RFC is "reserved to the Commissioner" because it is an "administrative finding that [is] dispositive of the case." 20 C.F.R. §§ 404.1527(d), 416.927(d). The ALJ "will assess your residual functional capacity based on all of the relevant medical and other evidence," not just medical opinions. 20 C.F.R. § 404.1545(a); 20 C.F.R. §§ 404.1513(a)(1), (4), 416.913(a)(1), (4) (explaining that evidence that can be considered includes objective medical

evidence, such as medical signs and laboratory findings; as well as evidence from nonmedical sources, including the claimant, such as from forms contained in the administrative record).

Thus, opinion evidence is only one type of evidence an ALJ is required to consider. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e) ("we will assess the residual functional capacity based on all the relevant medical and other evidence in your case record"); 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3) (explaining that the adjudicator will assess the RFC based on all the relevant evidence in the case record); 20 C.F.R. §§ 404.1513(a)(1),(4), 416.913(a)(1),(4) (explaining that evidence that can be considered includes objective medical evidence, such as medical signs and laboratory findings; as well as evidence from nonmedical sources, including the claimant, such as from forms contained in the administrative record); *Matta*, 508 F. App'x at 56 ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.").

Here, in assessing Plaintiff's mental limitations, the ALJ considered that Plaintiff had a long history of mental health treatment for which she received counseling and medication management. Tr. 1185. The ALJ acknowledged that during the relevant period Plaintiff had periods of stability with some exacerbations. Tr. 1185, 649, 653, 665, 677-78, 681, 725, 729, 733, 1069. For example, the ALJ noted that in March 2018, Plaintiff reported infrequent and less severe panic attacks, but then she had increased symptoms in October 2019 after her sister died. Tr. 1185, 919, 1508. Thereafter, Plaintiff sought treatment for chemical dependency for abusing prescription opiates and use of suboxone and cocaine, and after receiving medication therapy, she endorsed significant improvement in her mood and sleep. Tr. 1185, 1472-99. Despite reporting increased anxiety due to reduction in medication resulting from her chemical dependency treatment, mental

status examinations remained largely the same and were unremarkable. Tr. 1184-85, 1443, 1445, 1449, 1453, 1455.

The ALJ also considered Plaintiff's ability to obtain multiple jobs during the relevant period. Tr. 1185-86, 189, 233, 681, 1453. As the ALJ noted, Plaintiff was able to maintain these positions, and most positions ended due to her quitting, not due to being fired. Tr. 1186. The ALJ also considered Plaintiff's robust activities of daily living, as previously discussed. *Id*. *See Monroe*, 676 F. App'x 5 at 8, 9 (the ALJ properly considered evidence of the claimant's activities when assessing RFC). During the relevant period, Plaintiff cared for her sister, attended a concert, competed in a boat race, attended a game show, went to the casino, prepared meals for her father, performed household chores, and went on walks. Tr. 1186, 423, 431, 940, 951, 1045, 1078, 1548, 1582. Based on the foregoing, the Court finds that the ALJ's mental RFC is supported by the objective medical evidence, the opinion evidence Plaintiff's treatment history, and her extensive activities.

Finally, Plaintiff argues that the RFC finding did not properly account for consultative examiner Dr. Zali's stress limitations, despite the ALJ affording the opinion "great weight." *See* ECF No. 8-1 at 20-22. According to Plaintiff, because the ALJ assigned great weight to Dr. Zali's opinion that Plaintiff would have moderate limitations in handling stress, she was required to incorporate this limitation into the RFC or explain why it was not included. *See id*. (citing Tr. 326-27, 1183, 1186). Contrary to Plaintiff's argument, however, the ALJ explicitly considered Plaintiff's ability to handle stress and appropriately incorporated Plaintiff's difficulties dealing with stress into the RFC.

Plaintiff argues that remand is warranted because the ALJ failed to make any specific findings regarding "the nature of [Plaintiff's] stress, the circumstances that trigger it, and how those factors affect [her] ability to work" *See* ECF No. 8-1 at 20-22 (citing *Stadler v. Barnhart*,

464 F. Supp. 2d 183, 189 (W.D.N.Y. 2006)). However, even without an explicit stress-based limitation, an RFC may adequately account for a claimant's difficulties dealing with stress. *See, e.g.*, *Figgins v. Berryhill*, 15-cv-6748, 2017 WL 1184341, at *10 (W.D.N.Y. Mar. 29, 2017) (ALJ did not discuss Figgins ability to handle stress in the RFC, but limitation to routine and repetitive tasks with limited interaction with others implicitly addressed plaintiff's stress levels); *Lafond v. Astrue*, 6:12-cv-6046-MAT, 2013 WL 775369, at *12 (W.D.N.Y. Feb. 28, 2013) ("The ALJ adequately accounted for Lafond's limitations in dealing with stress by restricting him to simple and repetitive tasks; no fast-paced production requirements; the necessity of making only simple decisions; and few, if any, changes in the workplace.").

Here, like the cases cited above, the ALJ adequately accounted for Plaintiff's stress by limiting her to simple routine tasks, with the ability to make simple work-related decisions, with only occasional interaction with supervisors and co-workers but no interaction with the public. Tr. 1183. *See Mehnert v. Comm'r of Soc. Sec.*, No. 1:19-CV-1054 (WBC), 2020 WL 6048196, at *1 (W.D.N.Y. Oct. 13, 2020) ("Overall, an RFC limiting Plaintiff to simple, routine, repetitive work properly accounts for moderate limitations in the ability to deal with stress."); *see also Shirback v. Comm'r of Soc. Sec.*, 18-cv-01222-JGW, 2020 WL 247304 at *4 (W.D.N.Y. January 16, 2020) (citing cases and noting that "[t]here is plethora of case law within the Second Circuit holding that a[n] RFC for simple routine work is not inherently inconsistent with limitations in the plaintiff's ability to deal with stress or other specific areas of mental functioning.").

Furthermore, Plaintiff, who bears the burden of proving her RFC, has failed to show how these limitations do not reasonably account for her stress. *See Poupore*, 566 F.3d at 305-06 (The burden is on Plaintiff to show that she cannot perform the RFC as found by the ALJ.); *Reynolds v. Colvin*, 570 F. App'x 45, 47 (2d Cir. 2014) ("A lack of supporting evidence on a matter where the

claimant bears the burden of proof, particularly when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a denial of benefits.").

Based on the foregoing, substantial evidence in the record supports the ALJ's RFC finding. When "there is substantial evidence to support either position, the determination is one to be made by the factfinder." *Davila-Marrero v. Apfel*, 4 F. App'x 45, 46 (2d Cir. Feb. 15, 2001) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)). While Plaintiff may disagree with the ALJ's conclusion, Plaintiff's burden was to show that no reasonable mind could have agreed with the ALJ's conclusions, which she has failed to do. The substantial evidence standard is "a very deferential standard of review – even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise." *Brault*, 683 F.3d at 448 (emphasis in original). As the Supreme Court explained in *Biestek v. Berryhill*, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 8) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 9) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

DON D. BUSH
UNITED STATES MAGISTRATE JUDGE